STATE of Missouri, Respondent,

v.

Michael Shane WORTHINGTON, Appellant.

No. SC 81356.

Supreme Court of Missouri, En Banc.

Dec. 7, 1999.

Rehearing Denied Jan. 11, 2000.

**86**

Janet M. Thompson, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Linda Lemke, Asst. Atty. Gen., Jefferson City, for respondent. .

MICHAEL A. WOLFF, Judge.

Michael S. Worthington pleaded guilty on August 28, 1998, to one count of first degree murder, one count of first degree burglary, and one count of forcible rape. After finding him to be a prior and persistent offender, the court sentenced Worthington to death for the murder charge, 30 years on the burglary charge, and life imprisonment on the forcible rape charge, to be served consecutively. Because the trial court imposed the death penalty, this Court has jurisdiction of his appeal. *Mo. Const. art. V, sec. 3.* Ordinarily, appellate review of guilty pleas is extremely narrow. However, Sec. 565.035.2[1] requires this Court in death penalty cases to consider the punishment and "any errors enumerated by way of appeal."

We affirm.

### Facts

On September 29, 1995, appellant, Worthington, and a friend from work, Jill Morehead, were at his condominium in Lake St. Louis, watching television. At about 4:00 p.m., they left to pick up their paychecks from their employer, a local supermarket. They returned to the condo and had dinner and drinks. They then went to a nightclub where each had three drinks. After about two hours, Worthington and Morehead drove to Jennings where Worthington told Morehead he had to pick up money owed to him by a friend. Worthington testified he actually went to pick up drugs. Morehead stayed in her vehicle, while Worthington was in the house for about 15 minutes. They drove back to his condo where he left Morehead. Morehead left the condo when Worthington did not return after about 45 minutes.

Later that night, Worthington saw that the kitchen window was open in the condominium of his neighbor, Melinda Griffin. Worthington had seen Ms. Griffin around the condominium complex. He got a razor blade and gloves, and when he returned to her condo, he saw that a bathroom light had been turned on. Worthington cut through the screen. He confronted Ms. Griffin in the bedroom. He covered her mouth to stop her screams and strangled her until she became unconscious. Worthington began to rape her and she regained consciousness. Worthington raped Ms. Griffin with such force that he bruised the inside of her vagina, tore both labia minora, and made a large, deep tear between her vagina and anus. Ms. Griffin fought Worthington, and he beat her and strangled her to death. The wounds on her neck showed that Worthington used a rope or cord in addition to his hands to strangle her. He stole her jewelry, credit cards, mobile phone, keys, and her car.

The next morning, September 30, 1995, a police officer pulled Worthington over. Worthington was driving Ms. Griffin's car. The officer noticed a woman's items in the car such as make-up and shoes, but the car had not been reported stolen.

The next day, October 1, a neighbor discovered Ms. Griffin's body. When police arrived, they found the screen in the

---

1. References to statutes are to RSMo 1994 unless otherwise noted.

kitchen window had been cut to gain entry. They found Ms. Griffin's body lying bruised, bloody, and naked at the foot of the bed, with a lace stocking draped across it. All the bedroom drawers had been pulled open. DNA testing later established that semen found on Ms. Griffin's body came from Worthington.

Police officers found Worthington that evening, but when he saw the police, he pulled out a knife, held it to his throat, and threatened to commit suicide. Police officers convinced him to put the knife down and brought him into custody. Worthington was wearing a fanny pack containing jewelry and keys belonging to Ms. Griffin.

At the police station, Worthington relayed his story of four days of drinking and getting high. After being presented with the evidence against him, Worthington confessed to the killing but could not remember the details since, he said, he was prone to blackouts when using alcohol and cocaine. At the time the offenses occurred, Worthington said he was extremely high on Prozac, cocaine, marijuana, and alcohol. Worthington also said that two friends, Darick and Anthony, helped him with the burglary. However, this story was inconsistent with the physical evidence and with subsequent statements made by Worthington. Worthington pleaded guilty to the crimes charged. The judge imposed the death penalty for the murder conviction, as well as the prison terms for the other offenses. Worthington does not challenge the plea and sentences on the other offenses; his appeal here concerns only the death penalty.

### Was the Death Sentence Disproportionate?

Worthington contends that the trial court erred in that:

(1) the statutory aggravating circumstances found by the trial court were unconstitutional because they were duplicative and did not narrow the class of persons eligible for the death penalty,

(2) the trial court did not consider evidence that supported statutory mitigating circumstances, and

(3) the victim impact evidence was improper.

Worthington also contends that his sentence is disproportionate to similar cases.

### (1) Are the Statutory Aggravating Circumstances Unconstitutional?

### a. Are Statutory Aggravating Circumstances Duplicative?

 Defense counsel did not attack the constitutionality of the statutory aggravating circumstances; therefore, the issue is not subject to review except for plain error. *State v. Tokar,* 918 S.W.2d 753, 769–70 (Mo. banc 1996), *cert. denied,* 519 U.S. 933, 117 S.Ct. 307, 136 L.Ed.2d 224 (1996). In this appeal, Worthington requests plain error review on numerous points. Under the plain error rule, "Appellant must make a demonstration that manifest injustice or a miscarriage of justice will occur if the error is not corrected." *Id.*

Worthington contends that the state submitted "in the course of a felony" aggravating circumstance as two circumstances and as such it is duplicative. This allowed the judge to count the same conduct twice and, therefore, the balance between aggravating and mitigating circumstances was skewed toward death.

 Under section 565.032, in cases where the death penalty is imposed, the jury, or in this case where the jury is waived, the judge must determine whether a statutory aggravating circumstance is established beyond a reasonable doubt. Where there is a finding of one valid aggravating circumstance beyond a reasonable doubt, we will affirm the death sentence. *State v. Jones,* 979 S.W.2d 171, 185 (Mo. banc 1998), *cert. denied,* — U.S. ——, 119 S.Ct. 886, 142 L.Ed.2d 785 (1999); *State v. Smith,* 944 S.W.2d 901, 921 (Mo. banc 1997), *cert. denied,* 522 U.S. 954, 118 S.Ct. 377, 139 L.Ed.2d 294 (1997).

Here, the judge found two statutory aggravating circumstances beyond a reasonable doubt, and the record supports these findings: (1) Worthington committed the offense of murder for the purpose of receiving money or any other thing of monetary value from the victim of the murder, and (2) the murder was committed while Worthington was engaged in the perpetration of forcible rape and burglary. *See* section 565.032.2(4)(11). Appellant stated at his guilty plea hearing that he murdered Ms. Griffin while in the process of burglarizing her house and raping her, and that he took her money and other property afterward. Other evidence of these findings includes: Worthington was pulled over by a police officer while driving Ms. Griffin's car. He was wearing a fanny pack containing Ms. Griffin's jewelry and credit cards at the time of his arrest. Further, Ms. Griffin had been violently raped and Worthington's DNA matched that of the semen found on her body.

 The finding of a statutory aggravating circumstance serves the purpose of determining which defendants are eligible for the death penalty. *Tokar*, 918 S.W.2d at 771. *See also*, *State v. Brooks*, 960 S.W.2d 479, 497 (Mo. banc 1997), *cert. denied*, 524 U.S. 957, 118 S.Ct. 2379, 141 L.Ed.2d 746 (1998). Once the judge finds at least one aggravating circumstance beyond a reasonable doubt, then the judge can decide whether to impose the death penalty. *Id.* At this point, the judge no longer considers individual statutory aggravating circumstances but, rather, "all the evidence" in aggravation or mitigation of punishment in order to determine whether to sentence the defendant to death. Section 565.032.1(2); *State v. Shaw*, 636 S.W.2d 667 (Mo. banc 1982), *cert. denied*, 459 U.S. 928, 103 S.Ct. 239, 74 L.Ed.2d 188 (1982). *State v. Morrow*, 968 S.W.2d 100, 116–117 (Mo. banc 1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 222, 142 L.Ed.2d 182 (1998); *State v. Clemons*, 946 S.W.2d 206, 232 (Mo. banc 1997), *cert. denied*, 522 U.S. 968, 118 S.Ct. 416, 139 L.Ed.2d 318 (1997); *State v. Hall*, 955 S.W.2d 198, 209 (Mo. banc 1997), *cert. denied*, 523 U.S. 1053, 118 S.Ct. 1375, 140 L.Ed.2d 523 (1998). Here, the judge found at least one statutory aggravating circumstance, and that is sufficient to support imposition of the death penalty, if after reviewing all of the evidence, the judge determines that is the appropriate punishment.

**b. Do Statutory Aggravating Circumstances Fail to Narrow Class to which They Apply?**

Worthington contends that the duplication of the statutory aggravating factors did not channel and limit the judge's discretion to minimize the risk of arbitrary and capricious sentencing, relying on *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). We have already addressed the duplication issue above, noting that Missouri weighs all the evidence to determine if the death penalty is an appropriate sentence, thus minimizing the risk of capriciousness. The record supports both aggravating circumstances found by the judge.

 In addition, Worthington contends there does not exist a principled means to distinguish those who are made subject to the death penalty from those who are not. He essentially claims that his crime is no different than felony murder in which death would not be imposed. We disagree. Felony murder is distinguishable in that felony murder does not require deliberation. Section 565.021.1(2). Further, Worthington pleaded guilty and was sentenced by a judge, thus the judge properly considered in the sentencing phase the aggravating circumstance of murder during a robbery. *See State v. Hunter*, 840 S.W.2d 850 (Mo. banc 1992), *cert. denied*, 509 U.S. 926, 113 S.Ct. 3047, 125 L.Ed.2d 732 (1993).

 For a statutory aggravating circumstance to narrow the class of persons to whom the death penalty may be applied, that circumstance must satisfy two tests:

(1) it may not apply to every defendant convicted of murder, and (2) the circumstance must not be unconstitutionally vague. *Tuilaepa v. California,* 512 U.S. 967, 972, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994). Here, Worthington does not assert that the aggravating circumstance applies to all who commit murder, since not all murderers kill for money or while committing rape. Moreover, Worthington does not assert that the aggravating circumstance was vague. His argument fails.

### (2) Were the Mitigating Circumstances Ignored?

■ Worthington contends that the trial court's findings were erroneous because they were against the weight of the evidence and the court did not follow the law since the judge did not consider the statutory mitigating circumstances submitted and supported by the evidence. Worthington presented the following as mitigating circumstances pursuant to subsection 3 of section 565.032:(1) the murder was committed while the defendant was under the influence of extreme mental or emotional disturbance; (2) the defendant acted under extreme duress; (3) the defendant's age at the time of the offense; and (4) his capacity was substantially impaired due to drug and alcohol intoxication. Evidence presented supporting these factors was that he was 24 years old at the time he committed the offense, and he testified that he drank all day, went to a bar with a friend, and took drugs. He testified that his friends, Anthony and Darick, proposed the burglary. Worthington also presented non-statutory mitigating circumstances that he was abused and neglected as a child and he suffers from chemical dependency. The record does not support Worthington's contention that the trial judge did not consider the mitigating factors:

> THE COURT: ... The Court has considered all of the non-statutory mitigating circumstances and factors that have been offered to this court, and any other facts or circumstances which may be found from the evidence presented, and finds that defendant was raised in a dysfunctional family, and was neglected and abused as a child and further, that the defendant is a long-term drug abuser. Having considered all of the evidence and the aggravating and mitigating circumstances, the Court finds beyond a reasonable doubt that the aggravating circumstances outweigh the non-statutory mitigating circumstances
> ...

While the judge's comment quoted above does not mention statutory mitigating circumstances, it is clear from the entire record that the trial court did consider all of the evidence in imposing the death penalty. Worthington's claim is without merit.

### (3) Was the Victim Impact Evidence Improper?

■ Worthington contends the victim impact evidence was unduly inflammatory and violated his state and federal constitutional rights to due process, to a fundamentally fair trial to confront the witnesses against him, and to be free from cruel and unusual punishment. No objection was raised regarding this evidence and plain error review is requested.[2] *Rule 30.20.*

---

**2.** During this phase, defense counsel recited "no objection" to all of the exhibits and the majority of the testimony. Counsel did object three times to testimony that showed a preference for or recommended death. One of the statements objected to and preserved for review was "I believe this man has caused enough chaos and I ask he be fairly punished for what he has done." This does not recommend a specific sentence. The trial court did not abuse its discretion in overruling the objection. *See State v. Roll,* 942 S.W.2d 370 (Mo. banc 1997), *cert. denied,* 522 U.S. 954, 118 S.Ct. 378, 139 L.Ed.2d 295 (1997) (Judges presumed not to consider improper evidence when sentencing a defendant, thus Roll failed to show prejudice that constituted fundamental unfairness.) The other two objections were sustained by the trial court and not considered in sentencing.

We disagree with Worthington that the evidence violated his constitutional rights by being unduly prejudicial. *See Payne v. Tennessee,* 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991); *State v. Roberts,* 948 S.W.2d 577, *cert. denied,* 522 U.S. 1056, 118 S.Ct. 711, 139 L.Ed.2d 652 (1998).

Victim impact evidence is designed to show each victim's uniqueness as an individual human being. It is simply another form or method of informing the court about the specific harm caused by the crime in question, evidence of a general type long considered by sentencing authorities. *See Payne* and *Roberts, supra; State v. Knese,* 985 S.W.2d 759 (Mo. banc 1999), *cert. denied,* —— U.S. ——, 119 S.Ct. 1814, 143 L.Ed.2d 1017 (1999). During the penalty phase, thirteen witnesses[3] read prepared statements and asked that a message be sent to the community and that "justice" be served through the sentence imposed. Pictures of Ms. Griffin and her family, as well as awards and other evidence about her life were introduced at the hearing. This Court has rejected the notion that the state is only allowed to present a "brief glimpse" of the victim's life. *State v. Knese,* 985 S.W.2d 759. No manifest injustice occurred in allowing the judge, who was sentencing Worthington, to hear this victim impact evidence.

### Was Worthington Prejudiced by a *Debler* Violation?

Worthington contends that the state did not give notice to the defense that it intended to introduce evidence of his bad conduct in jail; his behavior in school; his burglaries with his father; misconduct with friends and associates and evidence from a Ms. Peroti of an alleged sexual assault, theft of her car, and assault of her son as evidence of non-statutory aggravating circumstances. The issue was not properly preserved for review, thus plain error review is requested.[4] *Rule 30.20.*

In general, both the state and the defense are allowed to introduce evidence regarding "any aspect of defendant's character." *State v. Debler,* 856 S.W.2d 641 (Mo. banc 1993). The decision to impose the death penalty, whether by a jury or a judge, is the most serious decision society makes about an individual, and the decision-maker is entitled to any evidence that assists in that determination. *Id.* at 656. This Court has interpreted *Debler* to mean that evidence of non-conviction misconduct is inadmissible where the state does not provide the defendant with notice that it intends to introduce the evidence. *See State v. Ervin,* 979 S.W.2d 149 (Mo. banc 1998); *State v. Kreutzer,* 928 S.W.2d 854 (Mo. banc 1996), *cert. denied,* 519 U.S. 1083, 117 S.Ct. 752, 136 L.Ed.2d 689 (1997); *State v. Chambers,* 891 S.W.2d 93 (Mo. banc 1994).

From the *Debler* line of cases, the failure of the state to provide notice of this evidence is error. However, the question remains whether the lack of notice and the admission of this evidence was plain error constituting manifest injustice. *See State v. Thompson,* 985 S.W.2d 779 (Mo. banc 1999). Under the totality of circumstances surrounding this evidence, the prejudice that would arise from such evidence as explained in *Debler* does not exist in this case.[5] Worthington pleaded guilty to

---

3. Two witnesses had prepared statements read to the judge by Ms. Griffin's mother.

4. Worthington contends that he specifically objected to some of the evidence being introduced and requests plain error review for the remainder. The record does not reflect a specific objection based on lack of notice. *See Thomas v. Wade,* 361 S.W.2d 671 (Mo. banc 1962) (unless there is a specific objec-tion to evidence which contains proper ground for its exclusion, nothing is preserved for review).

5. The potential for prejudice that exists, without the notice required by *Debler,* is that since "no jury or judge has previously determined a defendant's guilt for uncharged criminal activity, such evidence is significantly less reliable than evidence related to prior

these crimes and a judge determined Worthington's sentence. *See State v. Roll*, 942 S.W.2d 370 (Mo. banc 1997), *cert. denied*, 522 U.S. 954, 118 S.Ct. 378, 139 L.Ed.2d 295 (1997). Additionally, the record reflects that defense counsel stipulated to the evidence admitted, except for the testimony of Ms. Peroti. As to Ms. Peroti's testimony, the state had endorsed her two years before the penalty phase. Defense counsel was prepared to cross-examine her on the details of her failure to report the burglary and assault to police. Absent objection, there is no basis under a plain error analysis for concluding that the admission of the evidence was prejudicial to Worthington.

### Chapter 552 Examination Used to Prove Aggravating Circumstances

Worthington contends the trial court committed plain error in letting the state use his statements to Dr. Max Givon, made during a chapter 552 competency evaluation, to prove the statutory aggravating circumstances. He also claims that the admission of his statement violated his right to remain silent and his right to an attorney. Dr. Givon's report and testimony were stipulated to at trial. Thus, plain error review is requested.

### Dr. Givon's Testimony Used to Prove Statutory Aggravating Circumstances

■ Worthington fails to demonstrate manifest injustice or a miscarriage of justice by the admission of Dr. Givon's testimony.

Dr. Givon, a psychologist, evaluated Worthington to determine if he was competent to stand trial and to assist his attorney and to determine if he suffered from a mental disease or defect. He diagnosed appellant as cocaine and alcohol dependent and as having anti-social personality disorder. Dr. Givon also said Worthington was malingering, which is the intentional production of false or grossly exaggerated psychological or physical symptoms for an external reward.

Missouri statutes divide the guilt phase of trial from the penalty phase of trial in order to allow the admission of all relevant evidence in the penalty phase without fear of prejudicing the defendant in the guilt phase. Section 565.030.2.[6] Here, Worthington's guilt had already been established. Although Dr. Givon's diagnosis may have been internally inconsistent and his examination perhaps not as thorough as the other doctors who had previously seen Worthington, it was not plain error for the court to allow it as evidence during the penalty phase. *See State v. Copeland*, 928 S.W.2d 828, 839 (Mo. banc 1996), *cert. denied*, 519 U.S. 1126, 117 S.Ct. 981, 136 L.Ed.2d 864 (1997).

### Did Use of Statements Violate the Right to Remain Silent and Right to Counsel?

■ Worthington claims that the admission of his statements to Dr. Givon violated his right to remain silent and his right to an attorney, relying on *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981). This reliance is misplaced. *Estelle* stands for the proposition that a "criminal defendant who neither initiates a psychiatric evaluation nor attempts to introduce any psychiatric evi-

---

convictions. To the average juror, however, unconvicted criminal activity is practically indistinguishable from criminal activity resulting in convictions, and a different species from other character evidence." *Id.* at 657.

**6.** The distinction between the guilt phase and penalty phase is observed in section 552.020.14, RSMo Supp.1997, which provides as follows:

No statement made by the accused in the course of any examination or treatment pursuant to this section and no information received by any examiner or other person in the course thereof, whether such examination or treatment was made with or without the consent of the accused or upon his motion or upon that of others, shall be admitted in evidence against the accused on *the issue of guilt* in any criminal proceeding then or thereafter pending in court, state or federal. (emphasis added).

dence may not be compelled to respond to a psychiatrist if his statements can be used against him at a capital sentencing proceeding." 451 U.S. at 468, 101 S.Ct. 1866; *State v. Copeland*, 928 S.W.2d at 839. Here, Worthington, through counsel, requested the evaluation pursuant to section 552.020 and put his mental condition in controversy. Thus, since Worthington initiated the examination, he was not compelled to testify against himself, nor was his right to counsel violated.

### Guilty Plea Did Not Extinguish Right to Remain Silent [7]

 Worthington contends that the trial court erred in overruling the defense motion *in limine* to preclude the state from exceeding the scope of his proposed direct examination. The trial court ruled that if Worthington chose to testify he would be subject to full cross-examination. Worthington did not take the stand during the penalty phase.

 Here, Worthington wanted to testify and limit his examination to "his sorrowness, his remorse and his apology to the family" and the feelings he had upon hearing the victim impact evidence. Defense counsel asked the court to limit the scope of cross-examination to those issues only and specifically not let the state examine him on his background or the circumstances of the homicide itself.[8] The scope of cross-examination of a criminal

---

**7.** Worthington is correct in noting that under *Mitchell v. United States*, 526 U.S. 314, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999), a defendant who pleads guilty does not waive his rights against self-incrimination as to sentencing, but the transcript does not reflect whether this was the judge's basis in overruling the motion *in limine*. The transcript reflects defense counsel correctly presented the court with the correct rule of law. In any event, the basis for a trial court's decision is not critical on appeal. *See State v. Bradley*, 811 S.W.2d 379, 383 (Mo. banc 1991).

**8.** The transcript reflects that defense counsel noted that Worthington's decision to testify was against his advice, "knowing the scope of cross-examination of my client."

---

defendant (and spouse) is limited to those matters elicited on direct examination. Section 546.260; *State v. Gardner*, 8 S.W.3d 66 (Mo. banc 1999), (discussing rule for non-defendant witnesses). This Court has long held that cross-examination of a criminal defendant "need not be confined to a categorical review of the matters stated in direct examination, but may cover any matter within the fair purview of the direct examination." *State v. Knese*, 985 S.W.2d at 770.[9] A defendant, in a single proceeding, may not testify voluntarily about a subject and then invoke a privilege against self-incrimination when questioned about the details. *Mitchell v. U.S.*, 526 U.S. 314, 119 S.Ct. 1307, 1311–12, 143 L.Ed.2d 424 (1999). The scope of cross-examination is a matter primarily within the trial court's discretion. *State v. Knese, supra*, at 770. Here, the circumstances of the crime would be relevant to determine the appropriate punishment.

### Knowing, Intelligent and Voluntary Plea: Were the Warnings Defective?

Worthington asserts that his guilty plea was unknowing, unintelligent and involuntary because he was not informed of the meaning of deliberation, his possible defenses and range of punishment. He specifically argues that there was no record evidence that he was aware of the meaning

---

**9:** *See also, State v. Barnett*, 980 S.W.2d 297, 307 (Mo. banc 1998); *State v. Gray*, 887 S.W.2d 369, 386 (Mo. banc 1994); *State v. Mayo*, 487 S.W.2d 539, 540 (Mo.1972); *State v. Harvey*, 449 S.W.2d 649, 652 (Mo.1970); *State v. Dalton*, 433 S.W.2d 562, 564 (Mo. 1968); *State v. Moser*, 423 S.W.2d 804, 806 (Mo.1968); *State v. Scown*, 312 S.W.2d 782, 786–87 (Mo.1958); *State v. Brown*, 312 S.W.2d 818, 821 (Mo.1958); *State v. Hartwell*, 293 S.W.2d 313, 317 (Mo.1956); *State v. Dill*, 282 S.W.2d 456, 463 (Mo.1955); *State v. Shilkett*, 356 Mo. 1081, 204 S.W.2d 920, 924 (1947); *State v. Tull*, 333 Mo. 152, 62 S.W.2d 389, 393 (1933); *State v. Glazebrook*, 242 S.W. 928, 931 (Mo.1922); *State v. Cole*, 213 S.W. 110, 113 (Mo.1919).

of "deliberation," an essential element of the offense of first-degree murder. While the record does not contain detailed explanations, the record does not support Worthington's contention that he was uninformed or that his plea was involuntary.

Court: Has your attorney explained to you the nature of each charge and any lesser included charges, and also the possible defenses you might have in this case?

Worthington: Yes, ma'am.

Court: Have you had adequate opportunity to consult with them both as to the charge and effect of entering a plea of guilty to the charge?

Worthington: Yes, ma'am....

Court: Okay. Are you suffering from any mental disease or defect other than what you have just testified to?

Worthington: No, ma'am.

Court: Are you mentally prepared to proceed with proposed plea of guilty?

Worthington: Yes, ma'am.

Court: At the time of the crimes with which you are charged, did you know the difference between right and wrong?

Worthington: Yes, ma'am....

Court: Have you discussed the nature of the charges and the essential elements of the charges with the defendant?

Mr. Rosenblum: Yes.

Court: Mr. Worthington, do you understand the nature and essential elements of each and every charge to which you are entering a plea of guilty?

Worthington: Yes, ma'am....

Court: Have you been forced, threatened or coerced in any way to induce you to plead guilty?

Worthington: No, ma'am.

Court: Are you entering you plea of guilty here today freely and voluntarily on your part?

Worthington: Yes, ma'am.

 Worthington's reliance on *Wilkins v. Bowersox*, 145 F.3d 1006 (8th Cir. 1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 852, 142 L.Ed.2d 705 (1999), is misplaced. *Wilkins* concerns whether a defendant voluntarily waived his right to counsel. The court must inquire whether a defendant is competent to proceed *pro se*, and part of the inquiry is whether the defendant understands the nature of the charges, lesser included offenses, the range of punishment, and possible defenses to the charge. *State v. Funke*, 903 S.W.2d 240, 243 (Mo.App.1995). Neither the federal nor state constitution requires the plea court to define legal words used in the court's questions and statements. *State v. Shafer*, 969 S.W.2d 719, 732 (Mo. banc 1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 419, 142 L.Ed.2d 340. The court is not required to discuss in detail all possible defenses, lesser included offenses, and ranges of punishment before accepting a guilty plea when a defendant is represented by counsel. This is required of the court in *pro se* proceedings but only because there is no counsel to explain the charges, offenses, and punishment to the defendant. The record reflects that the court asked Worthington if he had understood the charges and elements thereof and he responded in the affirmative. In the circumstances, the information given to Worthington was adequate.

### Proportionality of Sentence

 Although not constitutionally required, section 565.035.3 requires this Court to conduct an independent review of a defendant's death sentence. The Court must decide whether the death sentence is excessive and disproportionate to other similar cases, whether the evidence supports the judge's findings of an aggravating circumstance, and whether the sentence was not imposed under the influence of passion, prejudice, or any other arbitrary factor.

After careful review of the record and transcript, this Court finds that the sentence of death imposed on Mr. Worthington was not imposed under the influence of

passion, prejudice or any other arbitrary factor. In this case, the judge found two aggravating circumstances: 1) murder for monetary gain, and 2) murder in perpetration of forcible rape. The evidence, particularly Worthington's own words, supports the findings. Considering the crime, the strength of the evidence, and the defendant, this Court finds the facts of this case are consistent with death sentences affirmed wherein victims were murdered in course of a robbery and murdered in perpetrating a rape. *See State v. Knese,* 985 S.W.2d 759, *cert. denied,* —— U.S. ——, 119 S.Ct. 1814, 143 L.Ed.2d 1017 (1999); *State v. Clemons,* 946 S.W.2d 206, 233 (Mo. banc 1997), *cert. denied,* 522 U.S. 968, 118 S.Ct. 416, 139 L.Ed.2d 318 (1997); *State v. Kinder,* 942 S.W.2d 313 (Mo. banc 1996), *cert. denied,* 522 U.S. 854, 118 S.Ct. 149, 139 L.Ed.2d 95 (1997); *State v. Tokar,* 918 S.W.2d 753 (Mo. banc 1996) *cert. denied,* 519 U.S. 933, 117 S.Ct. 307, 136 L.Ed.2d 224 (1996); *State v. Copeland,* 928 S.W.2d 828 (Mo. banc 1996) *cert. denied,* 519 U.S. 1126, 117 S.Ct. 981, 136 L.Ed.2d 864 (1997); and *State v. Kreutzer,* 928 S.W.2d 854 (Mo. banc 1996), *cert. denied,* 519 U.S. 1083, 117 S.Ct. 752, 136 L.Ed.2d 689 (1997). At the time Worthington entered his plea on the murder charge, he knew that the death penalty was one of only two options available to the trial judge—a sentence of death or life imprisonment without parole. There is nothing in the record to support the notion that the trial judge's choice was improper or inappropriate under the law.

The judgment of the trial court is affirmed.

All concur.