In the Missouri Court of Appeals
 Eastern District
 DIVISION TWO

STATE OF MISSOURI, ) ED109155
 )
 Respondent, ) Appeal from the Circuit Court of
 ) the City of St. Louis
v. ) 1922-CR00095-01
 )
BENJAMIN STIFF, ) Honorable Madeline O. Connelly
 )
 Appellant. ) Filed: July 27, 2021

 Benjamin Stiff (Defendant) appeals from the trial court’s judgment convicting him of

first-degree statutory sodomy, in violation of Section 566.062, 1 and sentencing him to 20 years

in prison. We affirm.

 BACKGROUND

 The State of Missouri (State) charged Defendant with statutory sodomy in the first

degree, in violation of Section 566.062, alleging that Defendant touched J.L.’s 2 vagina with his

hand while in bed between June 1, 2017, and August 15, 2017. A jury trial was held on

December 9 and 10, 2019, where the following evidence was adduced.

 J.L. (Victim) was born in 2010. Victim’s mother, Dawn Stiff (Mother), married

Defendant in 2014, and later that year they had a child together (Sister). In 2016, Mother left

1
 All statutory references are to RSMo (2016) as updated, unless otherwise indicated.
2
 The victim’s name is redacted pursuant to Section 595.225.
Defendant and moved to Kentucky, with Victim and Sister. In summer 2017, Victim and Sister

returned to St. Louis to visit with Defendant when he was residing with Shelby Prevost

(Prevost). Defendant wanted to spend time with his daughter, and did not want Victim to feel

left out. The girls wanted to stay with Defendant longer when Mother arrived to pick them up,

so she agreed to let them stay until school started and returned to Kentucky. In December 2017,

Mother again took Victim and Sister to visit Defendant for Christmas.

 In August 2018, when Mother, Victim, and Sister were residing with Danielle Davenport

(Davenport) and her children, Davenport noticed two of her children and Victim playing in a

room with the door shut, which she did not permit in her home. She opened the door and saw

Victim kneeling in front of her five-year-old son, whose pants were down. She became angry

and when she frantically asked what was going on, Victim ran out of the room, and Davenport’s

daughter explained what had happened. Davenport took all the children into her bedroom and

put on a movie so she could keep her eye on all of them. During the movie, Victim climbed up

onto the bed and told Davenport that Defendant touched her when he gave her baths. Victim

also said that when Defendant spanked her, he would make her touch him. Victim explained that

she had not said anything before because she didn’t want her mom to get into trouble. Victim

then cried uncontrollably for 35 minutes. Davenport called Mother and reported what Victim

said to her.

 Victim was interviewed at the Child Advocacy Center (CAC) in Kentucky. Victim told

the interviewer that Defendant had touched her two times on her “cootie,” which she identified

as her vaginal area. She said it first happened when Mother and Defendant lived together in St.

Louis and she had fallen asleep in Defendant’s bedroom while Mother was at work and the other

children were outside. The other time was when she was staying with Defendant at Prevost’s

 2
home for the summer. She was sleeping in a bed between Sister and Defendant while Prevost

slept on the floor. After she fell asleep, she saw Defendant’s hand, and felt it in her pants.

Victim stated she was afraid to say anything because Defendant told her he would do it again if

she ever told Mother.

 Shortly before trial, Defendant filed a “Motion to Admit Evidence of Prior Sexual

Conduct Pursuant to Section 491.015 RSMo.” 3 The motion declared Defendant’s intent to

adduce evidence at trial that Victim had made prior unrelated accusations of sexual abuse by

different individuals. The motion claimed that this evidence would not constitute evidence of

prior sexual conduct, but that it was filed out of an abundance of caution pursuant to Section

491.015.3. 4 Defendant sought admission of evidence that Victim had previously made reports of

sexual abuse, was familiar with how such reports were made, and the subsequent investigations

that took place because the State endorsed an expert to explain the process of delayed disclosure.

He argued that the prior investigations would be relevant in considering Victim’s statement that

she did not disclose earlier because Defendant threatened to touch her again. Defendant did not

raise a constitutional issue in the motion or at trial.

 The trial court took up Defendant’s motion during a recess on the first day of trial, after

the jury was seated. Defendant’s trial attorney (Defense Counsel) argued that the evidence he

3
 Section 491.015.1 prohibits opinion and reputation evidence of the complaining witness’ prior sexual conduct in
prosecutions under Chapter 566 and 568; and evidence of specific instances of the complaining witness' prior sexual
conduct or the absence of such instances or conduct is inadmissible, except where certain exceptions apply,
including (1) reasonably contemporaneous evidence of the sexual conduct of the complaining witness with the
defendant to prove consent as a defense to the alleged crime; (2) evidence of specific instances of sexual activity
showing alternative source or origin of semen, pregnancy or disease; (3) evidence of immediate surrounding
circumstances of the alleged crime; or (4) evidence relating to the previous chastity of the complaining witness in
cases, where, by statute, previously chaste character is required to be proved by the prosecution. Section 491.015.1.
4
 Section 491.015.3 requires the defendant to file a written motion and provide an offer of proof if he proposes to
offer evidence of the sexual conduct of the complaining witness under this section. This subsection provides for a
recorded in camera hearing for the court to determine the sufficiency of the offer. The court’s order should then
state the scope of the evidence allowed and its reasons for its ruling. Either side may make objections.

 3
sought did not fall under the rape shield law because he planned to show only that there had been

prior investigations relating to Victim after she disclosed sexual conduct, not to show the specific

details of that sexual conduct. Defense Counsel asserted that Victim’s delay in disclosing the

sexual conduct would be a large part of the case, and that the immediacy of her prior disclosures

showed that she knew the process of making a complaint and knew that adults would protect her

and make sure that she was okay. The trial court ruled that this evidence fell under the rape

shield statute as specific instances of the complaining witness’ prior sexual conduct.

 Defense Counsel argued that the evidence of the prior investigations fell under Section

491.015.2 because it was evidence that was relevant to a material fact or issue. Specifically, he

argued the prior investigations were relevant to Victim’s knowledge of sexual matters at such a

young age, her delay in disclosing the sexual conduct, and potentially Victim’s benefit of

keeping Defendant away from the family. Defense Counsel made an offer of proof, stating that

through the testimony of Victim and Mother, he would introduce evidence of prior Children’s

Division investigations into disclosures she made while staying in a homeless shelter with her

siblings and Mother. Victim told volunteers that an unknown boy touched her in her vaginal

area, “humped” her, and did “nasty things” to her. Victim also reported sexual activity of other

children, such as an eight-year-old that spoke about sexually explicit things she did at school,

and a four-year-old that also used sexually explicit language. Upon Victim’s disclosures, the

homeless shelter immediately informed Mother. However, Victim was not interviewed

following her reports of these prior incidents and the State noted, “nothing materially changed in

her life” due to her allegations. In addition, the Children’s Division investigation report

allegedly stated that the investigators did not believe Victim would know these kinds of sexually

 4
explicit details without talking to those kids and the occurrence with the unknown boy actually

happening to her.

 The trial court denied Defendant’s motion, finding he failed to establish a material fact or

issue that the evidence would aid the jury, and that the evidence was more prejudicial than

probative. The trial court added that if the State opened the door by arguing or implying that

Defendant was the sole source of Victim’s knowledge of sexual matters or inappropriate

touching, then Defendant could adduce the contested evidence.

 During trial, Victim testified that when she stayed in Prevost’s home, she slept in bed

with Sister and Defendant, and Prevost slept on the floor. When she was in bed, she kept feeling

tickling things on her “haha,” which is what she used to go to the bathroom. She would wake up

and Sister was near her. She never saw a hand or anything near her “haha.”

 The State called Linda McQuarry (Expert), the forensic director at the CAC in St. Louis,

to testify to the process of disclosure, the purpose of the forensic interview and how one is

conducted in St. Louis. She did not know the facts of the case and had neither met Victim nor

reviewed her CAC interview. She testified that a “purposeful disclosure” occurs when a child

chooses to tell someone what happened, while an “accidental disclosure” occurs when the

information is disclosed not because the child made a choice but is discovered in a different way,

for example walking in on an abusive scenario or reading about something in a diary.

 Expert explained the “different steps” that many children go through with an accidental

disclosure, although every child may not experience each step in a “chronological manner.”

Denial is often the first step, followed by a “tentative disclosure” where a child does not fully

deny but also does not give a full account. For example, “maybe something happened one time,”

or “I don’t remember everything,” or “I really don’t want to talk about it.” She identified the

 5
next step as “active disclosure,” where a child fully discloses what has happened. She explained

that some children may then recant and/or later reaffirm their initial disclosures. She compared

disclosure to the way people enter a swimming pool – some dive right in while others slowly test

the water. Expert further testified that delayed disclosure is the “norm” in her work, for reasons

such as reluctance to hurt family or cause someone to go to jail, feeling ashamed or embarrassed,

or afraid of being blamed.

 During closing argument, the State reminded the jury of Expert’s testimony regarding the

types of disclosure and argued that Victim’s disclosure was accidental in that she did not want to

tell anyone because she was afraid of Defendant and he had told her he would do it again if she

told. Defense Counsel argued Victim was not telling the truth, and the inconsistencies could not

be explained by the delay or incremental disclosure testimony as seen in the timeline where

Victim continued to go stay with Defendant even after the alleged abuse; Victim did not say

anything or act differently after the alleged incidents. Defense Counsel questioned the reason

Victim gave the CAC interviewer for her delay in making the allegations and said this should

give the jurors pause and find Defendant not guilty. The State’s rebuttal asked the jurors to

recall Expert’s testimony regarding the delayed disclosure to give them the whole picture for a

child’s disclosure. The State reminded the jurors why children delay in disclosing and that

Victim’s process was consistent with delayed disclosure.

 The jury found Defendant guilty of first-degree sodomy as charged. The trial court found

he was a prior offender and sentenced him to 20 years of imprisonment in the Missouri

Department of Corrections. This appeal follows.

 6
 DISCUSSION

 In his sole point on appeal, Defendant alleges the trial court plainly erred in excluding

evidence of prior disclosures of sexual conduct made by Victim, which are not protected by

Section 491.015, the rape shield statute. Defendant claims such exclusion violated his

constitutional rights to confrontation, fair trial, and due process of law, as guaranteed by the

Sixth and Fourteenth Amendments to the U.S. Constitution and Article I, Sections 10 and 18(a)

of the Missouri Constitution. Defendant alleges the trial court’s ruling resulted in manifest

injustice because such exclusion prejudiced his defense by his constitutional rights to present his

defense in a case where the evidence of guilt was not overwhelming and was entirely dependent

on Victim’s credibility.

 Standard of Review

 Ordinarily, “whether a criminal defendant’s rights were violated under the Confrontation

Clause . . . is a question of law that this Court reviews de novo.” State v. Campbell, 600 S.W.3d

780, 788 (Mo. App. W.D. 2020) (citing State v. March, 216 S.W.3d 663, 664-65 (Mo. banc

2007)). That assumes, however, that the constitutional challenge has been properly preserved.

Id. “‘[T]he rule is clearly established that in order to preserve a constitutional issue for appellate

review, it must be raised at the earliest time consistent with good pleading and orderly procedure

and must be kept alive during the course of the proceedings.’” Campbell, 600 S.W.3d at 788

(citing Kirk v. State, 520 S.W.3d 443, 457 (Mo. banc 2017) (quoting State v. Liberty, 370 S.W.3d

537, 546 (Mo. banc 2012))).

 Moreover, where a court excludes evidence prior to trial, the ruling is interlocutory only

and subject to change during trial. State v. Dowell, 25 S.W.3d 594, 601 (Mo. App. W.D. 2000).

The proponent of the evidence must attempt to admit the evidence at trial and make an offer of

 7
proof to preserve the issue for appellate review. State v. Purlee, 839 S.W.2d 584, 592 (Mo. banc

1992). An offer of proof must establish what the evidence will be, its purpose and object, and

each fact essential to establishing the admissibility of the evidence. Terry v. Mossie, 59 S.W.3d

611, 612 (Mo. App. W.D. 2001).

 Although Defendant raised the issue of Victim’s previously disclosed instances of sexual

conduct in his “Motion to Admit Evidence of Prior Sexual Conduct Pursuant to Section 491.015

RSMo.” at the pretrial hearing, Defendant failed to attempt to elicit the contested evidence at

trial and concedes the issue was not preserved for appellate review. He therefore requests plain

error review pursuant to Rule 30.20.

 Any issue not preserved at the trial level can be reviewed only for plain error. State v.

Pierce, 548 S.W.3d 900, 904 (Mo. banc 2018). Relief under the plain error rule is granted only

when the alleged error so “substantially affects” the rights of the accused that a “manifest

injustice or miscarriage of justice inexorably results if left uncorrected.” Id. (quoting State v.

Hadley, 815 S.W.2d 422, 423 (Mo. banc 1991)).

 Appellate courts use a two-step process when reviewing for plain error. State v.

Baumruk, 280 S.W.3d 600, 607 (Mo. banc 2009). First, a court must determine “whether the

claim of error facially establishes substantial grounds for believing that manifest injustice or

miscarriage of justice has resulted.” Id. (quoting State v. Worthington, 8 S.W.3d 83, 87 (Mo.

banc 1999)). Plain errors are those which are evident, obvious, and clear. Id. Second, if plain

error is found, a court must determine “whether the claimed error resulted in manifest injustice or

a miscarriage of justice.” Id. at 607-08 (quoting Steve v. Scurlock, 998 S.W.2d 578, 586 (Mo.

App. E.D. 1999)). When reviewing for plain error, the defendant bears the burden of

establishing manifest injustice as determined by the facts and circumstances of the case. Pierce,

 8
548 S.W.3d at 904. Plain error must be outcome determinative. State v. Baxter, 204 S.W.3d

650, 652 (Mo. banc 2006); Deck v. State, 68 S.W.3d 418, 427 (Mo. banc 2002).

 Analysis

 Defendant argues it is clear, evident and obvious that the trial court plainly erred in

excluding evidence of Victim’s prior disclosures of sexual conduct pursuant to the rape shield

statute, Section 491.015. He asserts the trial court violated his constitutional rights because the

disclosures did not fall within the rape shield law and that the exclusion of this evidence

prevented him from challenging the veracity of Victim’s allegation against him and deprived him

of a fair trial. We disagree.

 The trial court is vested with broad discretion regarding questions of relevance and

admissibility of evidence. State v. Davis, 186 S.W.3d 367, 373 (Mo. App. W.D. 2005).

Moreover, the scope of cross-examination and determination of matters that bear on witness

credibility are largely within the discretion of the trial court. Id. Such discretion should not be

overturned on appeal absent a clear abuse of discretion. Id.

 As outlined supra, Section 491.015.1 prohibits opinion and reputation evidence of the

complaining witness’ prior sexual conduct in prosecutions under Chapter 566 or 568; and

evidence of specific instances of the complaining witness’ prior sexual conduct or the absence of

such conduct is inadmissible, except where certain exceptions apply to those specific instances,

including (1) reasonably contemporaneous evidence of the sexual conduct of the complaining

witness with the defendant to prove consent as a defense to the alleged crime; (2) evidence of

specific instances of sexual activity showing alternative source or origin of semen, pregnancy or

disease; (3) evidence of immediate surrounding circumstances of the alleged crime; or (4)

evidence relating to the previous chastity of the complaining witness in cases, where, by statute,

 9
previously chaste character is required to be proved by the prosecution. Section 491.015.1.

However, Section 491.015.2 mandates that even if the evidence of the complaining witness’

sexual conduct is offered pursuant to one of these four exceptions, it is only admissible to the

extent the court finds the evidence relevant to a material fact or issue. Section 491.015.2.

 Defendant asserts State v. Lampley’s holding is binding here in that evidence of a

victim’s prior complaints, as opposed to prior sexual conduct, does not fall within the ambit of

Section 491.015. 859 S.W.2d 909, 911 (Mo. App. E.D. 1993). In Lampley, the prior unrelated

complaint was introduced to establish a motive to fabricate the accusation against him. Id. at

911. There the defendant argued the prior complaint resulted in the accused being removed from

the home, which was a benefit that the victim wished to repeat. Id. The court held the defendant

could cross-examine the child victim about a motive to fabricate based on the prior allegation.

Id.

 In dicta, the Lampley court proposed a “very simple” cross-examination that “may show

motive to fabricate and never implicate” the rape shield statute. Id. at 912. We respectfully

disagree and find the first question – “Did you make a complaint like this a few years ago?”

(emphasis added), expressly implicates the victim’s prior sexual conduct because the “complaint

like this” specifically referred to the alleged sex crimes against victim for which the defendant

was on trial. Id. While we agree that the prejudicial effect can be reduced by skillful

questioning, we find this rationale ignores the fundamental purpose of the rape shield statute to

prohibit such evidence except in four specific circumstances. Section 491.015.1. It is only if one

of these apply, that the prejudicial effect is then considered. Section 491.015.2. Therefore,

Section 491.015 is unequivocally applicable to a victim’s prior complaint when it is inherently

premised upon prior sexual conduct.

 10
 We find instructive the Missouri Supreme Court’s clarification of the rape shield statute

in McIntosh v. State, 413 S.W.3d 320, 331 (Mo. banc 2013), which considered a claim that trial

counsel was ineffective for failing to introduce evidence of a child victim’s prior sexual abuse

allegations in the defendant’s first-degree statutory sodomy trial. Id. at 330. The defendant

argued the evidence would have impeached the victim and rebutted the state’s closing argument

regarding the victim’s veracity. Id. However, the Court held the victim’s prior sexual abuse

allegations “would not be admissible at trial except under limited circumstances” specifically set

forth in the rape shield statute because Section 491.015 “creates a presumption that evidence of a

victim’s prior sexual conduct is irrelevant.” Id. at 331. The Court ultimately concluded that the

prior allegation had not been proven false and was not admissible as a prior false allegation to

generally impeach the victim’s credibility. Id.

 Here, we find Victim’s disclosures were evidence of specific instances of prior sexual

conduct and inadmissible under Section 491.015.1. Admission of these disclosures as only

“complaints” raised for timing purposes without details does not exempt them from the rape

shield statute. Like McIntosh, Defendant here did not allege Victim’s prior allegations of sexual

conduct were false or that she had age-inappropriate sexual knowledge to explain. In fact,

Defendant sought to introduce the evidence of prior sexual conduct allegations in order to

impeach the victim, 5 but none of Section 491.015’s limited circumstances were established to

admit this prohibited evidence. Therefore, the trial court did not err in ruling Victim’s

disclosures inadmissible because they did not meet any of the four exceptions to the rape shield

statute.

5
 The evidence of Victim’s prior sexual conduct complaints was actually an attempt to discredit Expert’s testimony
that a delayed disclosure was normal in abuse cases such as the one at issue. However, Expert’s testimony was clear
that she had not reviewed the specifics of Victim’s case and that disclosure comes in many different forms.

 11
 Once the trial court determined that the rape shield statute applied, any further argument

regarding the admissibility of Victim’s disclosures should have concluded pursuant to Section

491.015. However, the trial court heard additional arguments regarding the admissibility of the

evidence beyond the limited exceptions set forth in Section 491.015 and weighed the probative

value versus the prejudicial effect of the evidence as though the rape shield statute exceptions

applied, which they did not. Section 491.015.2 does not create “an independent statutory basis

for admitting specific instances of a complaining witness’s sexual conduct, and instead must be

read in conjunction with the exceptions described in Section 491.015.1(1)-(4), none of which are

argued by [Defendant] to apply.” State v. Campbell, 600 S.W.3d 780, 790 (Mo. App. W.D.

2020).

 However, evidence prohibited by the rape shield statute may still be admissible pursuant

to the rights conferred by Confrontation Clause to cross examine witnesses to expose bias or a

motive to fabricate. See State v. Samuels, 88 S.W.3d 71, 82 (Mo. App. E.D. 2009) (defendant’s

due process rights violated in banning evidence that victim gained unusual sexual knowledge

from a source other than defendant); State v. Montgomery, 901 S.W.2d 255, 257 (Mo. App. E.D.

1995) (prior allegations of sexual abuse where witness received benefits were relevant to witness

credibility); Lampley, 859 S.W.2d at 911 (evidence of a victim's prior sexual abuse complaint

was admissible to show motive to fabricate); State v. Douglas, 797 S.W.2d 532, 535 (Mo. App.

W.D. 1990) (if the state seeks to introduce evidence of a defendant's guilt or creates an inference

of a defendant's guilt, the rape shield statute may not be used to prohibit the defendant from

introducing contrary evidence without violating a defendant's constitutional right to a fair trial).

 However, “‘trial judges retain wide latitude insofar as the Confrontation Clause is

concerned to impose reasonable limits on . . . cross examination based on concerns about, among

 12
other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation

that is repetitive or only marginally relevant.’” Campbell, 600 S.W.3d at 789 (quoting Delaware

v. Van Arsdall, 475 U.S. 673, 679 (1986)). Similar to Campbell, here Defendant never asserted a

constitutional challenge in his “Motion to Admit Evidence of Prior Sexual Conduct Pursuant to

Section 491.015 RSMo.,” which by its nature is limited to the rape shield statute and can only be

raised pursuant to Section 491.015.3. Constitutional issues are separate and distinct claims that

must be expressly raised at the earliest possible time “consistent with good pleading and orderly

procedure and must be kept alive during the course of the proceedings.’” Campbell, 600 S.W.3d

at 788.

 In conclusion, we hold exclusion of the evidence would not have risen to the level of

plain error. Even though a relevance inquiry was not required pursuant to Section 491.015.2, we

agree with the trial court’s analysis that the instances of prior sexual conduct were completely

unlike the allegations against Defendant here. Facts demonstrating that a boy had previously

touched Victim’s vaginal area, “humped” her, and did other “nasty things” to her, and that she

heard of others’ engaged in sexual activity and “sexually explicit language” from another child,

did not reveal any connections in the conduct or outcomes relevant to help demonstrate that

Victim was lying in this matter. The prior allegations were directed toward children while this

one accused an adult step-parent. Victim was not interviewed following her reports of these

prior incidents and “nothing materially changed in her life” due to her allegations. Moreover, it

is an uncontroverted fact that Defendant effectively challenged Victim about her motives to

falsely accuse him due to the circumstances surrounding her disclosure without the evidence of

Victim’s prior sexual conduct complaints.

 Defendant’s point is denied.

 13
 CONCLUSION

 The judgment of the trial court is affirmed.

 ____________________________________
 Lisa P. Page, Judge

Sherri B. Sullivan, C.J. and
Thom C. Clark, II, J., concur.

 14