# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1570

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Ever David Granados, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: December 17, 2009
Filed:  March 8, 2010

_____

Before BYE, BEAM, and COLLOTON, Circuit Judges.

_____

BYE, Circuit Judge.

Ever David Granados appeals his conviction and sentence for conspiring to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 846.  He contends the district court[1] should have suppressed physical evidence found in warrantless searches of a hotel room and vehicle, statements he made to police officers after the searches, and evidence related to an allegedly suggestive photo lineup.  He also claims the government exercised peremptory strikes of certain venirepersons in violation of Batson v. Kentucky, 476 U.S. 79 (1986).  Finally, he appeals his sentence

_____

[1]The Honorable Karen E. Schreier, Chief Judge, United States District Court for the District of South Dakota.

of thirty-eight months arguing the district court[2] erred in its drug quantity calculations. We affirm.

I

This drug conspiracy charge against Granados arose from an incident which occurred at the Kelly Inn in Pierre, South Dakota, on June 14, 2008. Two weeks earlier, an individual named Travis Napton got caught possessing several pounds of marijuana; he agreed to cooperate with law enforcement and provide information about his supplier, a man named Gonzalo Lechuga Morales. Napton revealed that he owed Morales nearly $7,500 for a drug debt.

On June 14, Morales called Napton to tell him he was on his way to South Dakota to collect the debt. Napton allowed agents from the local drug task force to monitor and record his phone conversations. During the phone calls, Morales discussed plans to meet Napton at a hotel room to take care of the debt, consistently using the pronoun "we" when referring to himself, suggesting to law enforcement that he was not traveling alone. As Morales neared Pierre, one of the law enforcement agents drove out of town to observe the approaching vehicle. The agent saw a green Ford Expedition with two occupants. The man accompanying Morales turned out to be Granados, and a registration check on the Ford Expedition showed someone named David Granados owned the vehicle.

After Granados and Morales arrived in Pierre, Napton called Morales for instructions on where to meet. Morales said the exchange would take place at room 250 of the Kelly Inn. The task force then gave Napton $3,970 to use as partial payment for a controlled exchange. Napton called Morales again after arriving at the

---

[2]The Honorable Lawrence L. Piersol, United States District Judge for the District of South Dakota.

Kelly Inn and was invited to room 250. Following the task force's instructions, Napton declined to come up to the room and instead arranged to meet Morales in Granados's vehicle, located in the hotel parking lot. After the exchange of money took place, law enforcement agents arrested Morales.

Immediately after Morales's arrest in the parking lot, the officers proceeded to room 250. They smelled the odor of marijuana in the hallway outside the door. Using a room key card provided by the front desk, officers entered the room without a warrant and without knocking, found Granados, and placed him under arrest as well. After Granados was arrested, he signed a consent form allowing the officers to search both the hotel room and his Ford Expedition. Both the room and truck were subsequently searched and various items of incriminating physical evidence were found, including three cell phones, a piece of paper showing multiplication calculations involving 570 x 25 and 570 x 15 (later, it was determined "570" referred to the price of a pound of marijuana, and the "25" and "15" referred to shipments of twenty-five and fifteen pounds of marijuana), marijuana, and zig-zag rolling papers.

The officers took Granados to the Hughes County Jail in Pierre. Granados was advised of, and waived, his Miranda[3] rights. He then denied any knowledge of the drug dealing between Morales and Napton, but made statements about his relationship with Morales that could be used as incriminating evidence.

On June 16, 2008, an officer showed Napton a photo lineup which included Granados's photo. Napton pointed to Granados's photo and said he could have been one of the people Napton had previously dealt with in a drug transaction with Morales's brother. After Morales was arrested, he began cooperating with authorities as well, disclosing incriminating information about Granados. Morales admitted his

---

[3]Miranda v. Arizona, 384 U.S. 436 (1966).

involvement in a conspiracy to bring bricks of marijuana to South Dakota, and that Granados was one of his partners.

On June 24, 2008, a federal grand jury indicted Granados with conspiring to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 846. Prior to trial, Granados filed a motion to suppress the evidence obtained in the search of the hotel room and the Expedition, as well as the statements he later made to law enforcement, and evidence from the allegedly improper photo lineup. The motion to suppress was denied.

During trial, the government exercised peremptory strikes against three Native American venirepersons, leaving no minorities on the jury panel. Granados challenged the strikes under Batson. The district court denied the Batson challenges after determining the government gave race-neutral reasons for the strike.

At trial, both Napton and Morales testified regarding a number of deliveries of marijuana that took place in South Dakota, and Morales indicated Granados was part of the conspiracy. The evidence included Napton's identification of Granados in the photo lineup. The jury convicted Granados. At sentencing, the district court attributed 22.68 kilograms of marijuana to Granados based on the testimony given by Morales and Napton during the trial. This resulted in an advisory guidelines sentence of 33-41 months. The district court then sentenced Granados to thirty-eight months. This timely appeal followed.

II

Granados first challenges the district court's denial of his motion to suppress evidence obtained from the warrantless searches of the hotel room and truck, the statements he gave after those searches, and the photo lineup. "We review a district court's factual determinations supporting the denial of a motion to suppress for clear

error and its conclusions of law de novo." United States v. Griffith, 533 F.3d 979, 982 (8th Cir. 2008).

The district court found probable cause and exigent circumstances justified the initial warrantless entry into the hotel room. The district court also found Granados gave valid consent for the subsequent search of the hotel room and Expedition, and validly waived his Miranda rights before making statements during his interrogation. Finally, the district court concluded the photo lineup was not impermissibly suggestive. We believe all of those determinations are correct.

With respect to the initial entry into the hotel room, Granados argues the smell of marijuana in the hallway outside the room was not enough of a basis to satisfy the exigent circumstance exception to the warrantless entry, citing Johnson v. United States, 333 U.S. 10, 14-15 (1948) (ruling that the smell of opium burning outside a hotel room did not justify a warrantless entry). The smell of marijuana in the hallway, however, was not the only information available to the officers when they entered the hotel room. See United States v. Kelly, 329 F.3d 624, 628 (8th Cir. 2003) (explaining that probable cause is determined by looking at the "totality of the circumstances as set forth in the information available to officers").

When the officers decided to enter the hotel room, not only could they smell marijuana in the hallway, but they were also aware Granados, the person traveling with Morales, was likely in the room. Morales had just been arrested for receiving over $3,000 in payment for a past delivery of marijuana. Law enforcement knew (via Napton) that Morales sometimes carried guns or knives and, because Morales did not have weapons on him after his arrest in the Expedition, it was reasonable to believe weapons may be in the hotel room. Drug dealers frequently employ lookouts to monitor a drug or money exchange, and thus it was reasonable for officers to believe Granados may have been surveilling the transaction which took place between Morales and Napton in the hotel parking lot, or suspected something was wrong when

Morales did not return immediately with the money. The officers were concerned about the safety of their cooperating witness, Napton, and his family because Morales knew where Napton lived. It was possible Granados could escape and harm Napton's family if he was aware the transaction between Morales and Napton was a controlled delivery that resulted in Morales's arrest.

We agree with district court's determination that, under the totality of circumstances present here, the

> task force was justified in entering Granados' room without a warrant because of its reasonable belief that it was necessary to protect the general public, hotel guests and employees, [Napton's] family, and the officers and agents themselves from a possible violent action from Morales' associate.

United States v. Granados, 587 F. Supp. 2d 1112, 1120 (D. S.D. 2008).

With respect to the issue of consent for the subsequent search of the Expedition and hotel room, Granados does not challenge the district court's factual determinations regarding the validity of his consent, but rather contends his consent was invalid because it was obtained as a "fruit" of the allegedly illegal warrantless entry into the hotel room. See Wong Sun v. United States, 371 U.S. 471, 484-88 (1963). Because we conclude the initial entry into the hotel room was supported by probable cause and exigent circumstances, this argument necessarily fails. Similarly, with respect to the issue of the admission of statements Granados made after he was arrested and Mirandized, Granados's sole contention is the statements must be suppressed as the "fruit" of the allegedly illegal warrantless entry into the hotel room. Because we conclude the warrantless entry was legal, this contention necessarily fails as well.

Granados next challenges the admission of the evidence that Napton identified him in a photo lineup. When considering the admissibility of a photo lineup

identification, we examine 1) whether the identification procedure is impermissibly suggestive, and 2) whether under the totality of the circumstances the suggestive procedure creates a very substantial likelihood of irreparable misidentification. United States v. Williams, 340 F.3d 563, 567 (8th Cir. 2003). Granados contends the photo lineup was impermissibly suggestive because not all the individuals in the six photos shown to Napton had facial hair, and the photo of Granados was disproportionate to the other photos.

The district court examined the photos used in the lineup and determined they "contain[] head shots of six men with similar skin tone and dark hair. Some of the men have facial hair. The array contains no identifying information. Because there are no differences in appearance that tend to isolate Granados, the array is not impermissibly suggestive." Granados, 587 F. Supp. 2d at 1123. Granados did not include the six photos in the record on appeal, so it is impossible to assess his claim his photo was disproportionate to the other photos. Furthermore, the lineup may have been suggestive if only Granados had facial hair, or only Granados had no facial hair, but the mere fact some of the men had facial hair does not, standing alone, indicate the lineup was suggestive. We find no error in the district court's admission of the lineup evidence.

Granados, who is Hispanic, next challenges the government's exercise of peremptory strikes against three Native American venirepersons, which resulted in the exclusion of all minorities from the jury panel. See Green v. Travis, 414 F.3d 288, 299 (2d Cir. 2005) (indicating the government's use of peremptory challenges against all minorities establishes a prima facie case of discrimination). We review the district court's disposition of Batson challenges for clear error. United States v. Rodriguez, 581 F.3d 775, 791 (8th Cir. 2009).

The Supreme Court has set forth a three-step inquiry to determine whether peremptory strikes are being exercised in a discriminatory manner:

> First, the defendant must make a prima facie case that the prosecution's strike was motivated by race; second, the prosecution must offer a race-neutral reason for the strike; and third, taking into account all the evidence, the trial court must find whether or not the prosecutor was motivated by purposeful discrimination.

United States v. Spotted Elk, 548 F.3d 641, 658 (8th Cir. 2008) (citing Snyder v. Louisiana, 552 U.S. 472, 476-77 (2008)). The district court determined the government gave racially neutral reasons for exercising its peremptory challenges to all three of the potential jurors Granados claims the government struck in violation of Batson, and determined the government was not motivated by purposeful discrimination.

The government indicated it struck Juror 34 because she had been arrested and convicted of driving under the influence (DUI), her sister had been convicted of embezzlement, and she had been interviewed by law enforcement in relation to her sister's crime. These are all valid, race-neutral reasons for exercising a peremptory challenge. Cf. United States v. Wiggins, 104 F.3d 174, 176 (8th Cir. 1997) (affirming the denial of a Batson challenge where the reason given for striking the juror was the incarceration of a family member); see also Luckett v. Kemna, 203 F.3d 1052, 1054-55 (8th Cir. 2000) (indicating the prior arrest of a potential juror is a valid race-neutral reason for exercising a peremptory strike).

The government indicated it struck Juror 37 because she had been convicted of a DUI in Hughes County at a time when the prosecutor representing the United States in this matter was serving as the Hughes County State's Attorney. The government also discovered Juror 37 had an active warrant for her arrest for failure to pay the fine relating to the DUI. Having an outstanding warrant for the arrest of a potential juror is clearly a valid, race-neutral reason for exercising a peremptory strike.

The government indicated it struck Juror 45 because she indicated she knew one of the government's witnesses, case agent Jason Baldwin. The potential juror indicated she was at her sister's house when "Jason Baldwin came over there. It was like a raid. I don't know." She also revealed her husband was currently represented by the defense attorney in a pending DUI case. The district court correctly determined this potential juror's presence at a relative's house during the execution of a drug search warrant by a government witness was a valid, race-neutral reason for exercising a peremptory strike. See, e.g., United States v. Brown, 560 F.3d 754, 763 (8th Cir. 2009) (upholding the exercise of peremptory strikes against venirepersons who had negative experiences with law enforcement).

Finally, Granados contends the district court erred in attributing 22.68 kilograms of marijuana to him for sentencing purposes. We review the district court's factual determinations regarding drug quantities for clear error. United States v. Minnis, 489 F.3d 325, 329 (8th Cir. 2007).

In this case, the district court based its calculation of drug quantities upon the evidence adduced at trial from Morales and Napton. Morales testified to three separate shipments of marijuana weighing ten pounds, fifteen pounds, and twenty-five pounds, for a total of fifty pounds or 22.68 kilograms. Napton also testified about three separate trips – fifteen pounds on the first trip, ten pounds on the second trip, and twenty-five pounds on the third trip. Evidence regarding the amounts involved in two of those trips (the fifteen and twenty-five pound trips) was corroborated by a slip of paper showing math calculations multiplying $570 (the purchase price for a pound of marijuana) by "15" and "25."

Granados claims the district court should not have believed the two witnesses because they were, in his view, not credible. The district court's determination regarding the credibility of the two witnesses is, however, virtually unreviewable on appeal. See United States v. Mickelson, 378 F.3d 810, 822 (8th Cir. 2004). We

therefore find no clear error in the district court's determination with respect to the drug amounts attributed to Granados.

III

We affirm the judgment of conviction and sentence in all respects.

_____